

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORTIA E. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | CASE NO. ED CV 04-666-PJW<br><br>MEMORANDUM OPINION AND<br>ORDER (AFTER REMAND) |

I.

INTRODUCTION

　　This is the latest chapter in the continuing saga of Plaintiff Portia E. Johnson, who seeks social security benefits based on her alleged disabilities. After considering Defendant Social Security Administration's (the "Agency") latest attempt to resolve this case, the Court is convinced that, though mistakes were made, the Agency's decision is supported by substantial evidence and must be upheld. Therefore, for the reasons discussed below, the decision of the Agency is affirmed and the case is dismissed with prejudice.



## II.

## SUMMARY OF FACTS AND PROCEEDINGS

In 1992, Plaintiff filed her first application for disability benefits, claiming that she was "unable to work because of hypertension, ankle pain, knee pain and back pain." (AR 72, 78.) Following denial by the Agency initially and on reconsideration, Plaintiff requested and was granted a hearing. (AR 78, 85.) She appeared and testified at the hearing and told the ALJ that, in addition to her physical impairments, she suffered from depression. After the hearing, she submitted psychiatric records supporting her claim of depression. (AR 243.)

On November 17, 1994, the ALJ issued a decision denying her claim. (AR 241-47.) He found that, though Plaintiff suffered from numerous severe impairments, including depression, none of them was disabling, as that term is defined in social security law. (AR 245-46.) He also concluded that Plaintiff was not credible. (AR 245-247.) Plaintiff did not appeal that decision.

In September 1996, Plaintiff filed a second application for benefits. (AR 13, 285-288.) Plaintiff claimed an inability to work due to "back, knee, and chest pain, headaches, high blood pressure, obesity, and osteoarthritis." (AR 263.) That application was denied initially and on reconsideration. (AR 257-260, 263.) Plaintiff did not request a hearing before an ALJ. (AR 13.)

In 1997, Plaintiff filed this, her third application. Plaintiff claimed she was disabled as a result of pain and swelling in her feet. (AR 271.) After reviewing the records submitted by Plaintiff, the Agency denied her disability claim initially and on reconsideration. (AR 267-270, 273-277.) Plaintiff then requested a hearing before an

ALJ, which request was granted. Plaintiff appeared with counsel at a July 13, 1998 administrative hearing and testified on her own behalf. (AR 26-71.)

On January 29, 1999, the ALJ issued a decision denying Plaintiff's claim for disability. (AR 12-20.) He found that Plaintiff suffered from the severe impairments of chronic low back pain, obesity, and a depressive condition. (AR 14.) Ultimately, he concluded that Plaintiff's depression was mild, and that neither her depression nor her other impairments precluded her from working. (AR 19.) In so holding, the ALJ rejected the opinion of Dr. Dey, Plaintiff's treating psychiatrist, that she could not work and relied instead on the opinion of Dr. Gross, the non-examining, consulting psychiatrist, who had concluded that she could work. (AR 18, 537-541.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which affirmed the decision. She then filed suit in this Court, seeking review of the Agency's decision. This Court concluded that the ALJ had erred in rejecting treating psychiatrist Dr. Dey's opinion and accepting, instead, non-treating, non-examining psychiatrist Dr. Gross's opinion. The case was remanded to the Agency so that the ALJ could address that error and hold a new hearing to obtain additional evidence and testimony.

On remand, the ALJ held another hearing and collected additional evidence. On March 24, 2004, he issued a decision denying Plaintiff's claim for benefits, concluding once again that she was not disabled. (AR 596-608.) This time, however, he found that Plaintiff's depression did not even meet the minimal "severe impairment" threshold. (AR 607-08.) In rendering his decision, he failed to even

3

mention Dr. Gross, the non-examining, consulting psychiatrist he had relied on in his earlier decision.

Plaintiff appealed the ALJ's decision, but the Appeals Council affirmed it. She then filed this suit, complaining that the ALJ erred when he failed to consider Dr. Gross's findings and, further, when he concluded that Plaintiff did not have a severe mental impairment.

### III.
### DISCUSSION

A.  Standard of Review

The district court reviews the decision of the ALJ to determine whether it is supported by substantial evidence and is based on the correct legal standards. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)(defining substantial evidence as relevant evidence a reasonable person might accept as adequate to support the ALJ's conclusion, considering the whole record). It is evidence that is more than a scintilla and less than a preponderance. *Holohan*, 246 F.3d at 1201. "In determining whether the [Agency]'s findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [Agency's] conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); and see *Holohan*, 246 F.3d at 1201. If the evidence supports either outcome, the Agency decision will be affirmed. *Id.* at 720-721. Moreover, as a result of the limited scope of review, the ALJ's

decision will be upheld where the evidence is conflicting or inconclusive. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988).

B. <u>Analysis</u>

    1. <u>The ALJ Erred When He Failed to Consider Dr. Gross's Opinion</u>

In his 1999 decision, which this Court reversed in 2002, the ALJ relied on the opinion of Dr. Gross, a non-treating, non-examining psychiatrist, in determining that Plaintiff's depressive condition did not interfere with her ability to work, despite the fact that Plaintiff's treating physician had arrived at the opposite conclusion. In his 2004 decision after remand, the same ALJ did not even mention Dr. Gross. Plaintiff argues that this was error on the ALJ's part and that the ALJ was required under Social Security Ruling 96-6p to explain the weight given to this opinion. She contends that Dr. Gross's opinion sets forth various limitations for Plaintiff, which would have precluded a finding that she could work to the extent the ALJ concluded that she could. Defendant points out that the ALJ stated in his 2004 decision that he was incorporating his 1999 decision and, therefore, he implicitly did evaluate Dr. Gross's opinion in his 2004 decision.

In a word, Defendant's argument here is weak. In the 1999 decision, the ALJ found Dr. Gross's opinion so important that he used it as the basis to reject the opinion of Plaintiff's treating physician. To subsequently issue a 13-page decision after being criticized for relying too heavily on Dr. Gross's opinion and not even mention his name is inexplicable. Defendant's argument that the ALJ does not have to mention every piece of evidence, though technically correct, is simply not relevant. Dr. Gross's opinion was an important

piece of evidence in this case and it should have been discussed by the ALJ in his 2004 decision.

    2.   <u>The ALJ Erred When He Concluded at Step Two that Plaintiff's Depression was not a Severe Impairment</u>

The term "severe impairment" at step two of the sequential evaluation process applied in social security cases is used to identify impairments that are more than *de minimis*. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)(citation omitted). At this stage, the ALJ is only supposed to eliminate groundless claims. *Id.* Plaintiff's claim of depression was not groundless, and the ALJ erred in concluding that it was. The best indication that her claim was not groundless is this same ALJ's 1999 decision, in which he concluded that Plaintiff's "depressive condition" amounted to a severe impairment. (AR 14.) Another ALJ arrived at the same conclusion in 1994. (AR 245-46.) In addition to the ALJs' earlier findings that Plaintiff's depression was more than *de minimis*, one need only survey the doctors who evaluated or treated Plaintiff over the years, almost all of whom found that she suffered from some degree of depression. For example, Dr. Malancharuvil--the expert called to testify at the last administrative hearing and the one whom the ALJ relied on-- testified that Plaintiff suffered from "depressive disorder, not otherwise specified." (AR 777.) Dr. Dey, Plaintiff's treating psychiatrist, likewise concluded that Plaintiff suffered from depression. (AR 590-92.) So did Dr. Gross, the Agency consulting psychiatrist. (AR 531, 535.) As did others. Though many of the doctors also concluded that Plaintiff was, at a minimum, exaggerating, and probably consciously malingering, they still concluded that she suffered from depression. The ALJ's conclusion at step two that

Plaintiff's depression was not a severe impairment ignores the vast majority of the medical evidence in this now 815-page record and was in error.

3. <u>The ALJ's Decision Will Be Affirmed</u>

Despite the fact that the ALJ has erred, again, the Court finds that his ultimate conclusion should be affirmed and Plaintiff's case dismissed. The point of Plaintiff's applications was for the Agency to determine whether she was disabled, meaning this: was she no longer capable of working? The ALJ ultimately concluded that Plaintiff could work, in 1999 and, again, in 2004. The best test of the ALJ's conclusion was the fact that, after he denied Plaintiff's claim in January 1999, she went back to work in April 1999 and worked full-time for four years, until March 2003, when she had to quit due to injuries she sustained in a car crash. Because Plaintiff could work, she was not disabled. Unlike most cases, where the Agency and the courts must merely make an educated guess as to whether someone can work despite their ailments, Plaintiff provided undisputed proof that she could work when she did so from 1999 to 2003.

Though her employment between 1999 and 2003 does not conclusively establish that she could have worked from 1996 to 1999, it is certainly fairly strong circumstantial evidence that she could have. Further, with the state of this record it is not conceivable that Plaintiff could establish that she was disabled during this period. Clearly, the Agency has already conclusively determined that she was not disabled any time prior to November 27, 1996. That decision is final as far as the Agency is concerned and its decision (not to reopen) is not subject to review by this Court. *See* 20 C.F.R. § 404.988(b) (2004). Plaintiff's full-time employment from 1999 to

2003 leaves no doubt that she was not disabled during that period, either. Thus, Plaintiff is left to argue that she became completely disabled beginning on November 28, 1996, and remained disabled until March 1999, two months after the ALJ ruled that she was not disabled and she went back to work. This task is only that much more complicated by the fact that Plaintiff has repeatedly been found to be not credible, by the doctors who treated and examined her as well as by the ALJs who watched her testify. Plaintiff has not challenged the ALJ's credibility findings. Because credibility determinations are the province of the ALJ, see Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989), this Court will not second-guess an unchallenged credibility finding. See Solomon v. Secretary of Health and Human Services, No. 91-CV-77171 DT, 1992 WL 478586, at *2 (E.D. Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's determination of her credibility, and the Court accepts it as accurate."). The long and the short of it is that Plaintiff has not proven that she is disabled in her many tries before the Agency and there is no chance that another try would change that outcome. The ALJ's errors this last time around did not contribute to his finding that Plaintiff was not disabled. Even had the ALJ found at step two that Plaintiff's depression was a severe impairment, and even if he had addressed Dr. Gross's opinion, there is no doubt that he still would have arrived at the same conclusion, i.e. that Plaintiff was not disabled.[1] Further,

---

[1] In fact, despite his finding at step two that Plaintiff did not have a severe mental or emotional impairment, the ALJ implicitly proceeded to steps three, four, and five when he evaluated the psychiatric evidence and concluded that Plaintiff's psychological problems--whether or not severe--did not prelude her from working. (AR 603-05.)

this conclusion is supported by substantial evidence in the record and is affirmed. For that reason, her Complaint is denied and this action is dismissed with prejudice.

IT IS SO ORDERED.

DATED: *July 13, 2005*.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\JOHNSON, P 666\Memo & Ord after remand.wpd